**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| |
|---|
| **WILNER PIERRE,**<br><br>　　　　　*Plaintiff*<br>　　v.<br><br>**POLICE OFFICER CLARKE, et al.,**<br><br>　　　*Defendants.* |

Case No. 2:19-cv-5836-JDW

## <u>MEMORANDUM</u>

Two Philadelphia police officers saw an Uber driver commit two traffic violations, so they pulled him over. At some point after the officers approached the car, the driver asked to speak to a supervisor. The officers ordered the driver out of the car and frisked him. They didn't find anything, but they still put him in handcuffs and made him wait in the backseat of their police cruiser for a supervisor to arrive. None of this is in dispute.

What is in dispute is why the officers did what they did. They say that the driver engaged in several suspicious acts. He tells a different tale. There is no eyewitness testimony and no useful video footage of the encounter. So the Court has to do what it does in every case with disputed evidence: take the evidence in the light most favorable to the non-moving party. In this case, that means accepting the driver's version of events. When the Court accepts that version, many of the officers' reasons for frisking, handcuffing, and detaining the driver fall away. What's left does not justify the acts the officers took. The Court will therefore deny the officers' motion for summary judgment and leave a jury to resolve the competing factual narratives in this case.

## I.      BACKGROUND

### A.      The Traffic Stop

On May 31, 2019, Philadelphia Police Officers Kevin Norton and Jason Clarke were driving below the speed limit on the 4800 block of Bingham Street in Philadelphia, looking for a wanted person. Wilner Pierre, an Uber driver, went around their patrol car by crossing into the oncoming traffic lane. The officers then saw him drive through a stop sign. Having seen enough, they stopped Mr. Pierre's car.

Before approaching Mr. Pierre's car, Officers Norton and Clarke ran Mr. Pierre's license plate through their system. There were no hits. The officers claim that while they were sitting in their car, they observed Mr. Pierre moving around a lot, reaching around in his car, and appearing frantic. Mr. Pierre denies moving around in his car, and video that the parties submitted is inconclusive. For purposes of this Motion, the Court therefore concludes that Mr. Pierre was not moving around the way the officers describe.

When the officers approached Mr. Pierre's car, he did not have his license, registration, and insurance information in hand. Officer Norton asked for that information. The officers contend that Mr. Pierre did not comply with their request and instead asked why the officers stopped him. Mr. Pierre disputes that and claims that he asked about the reason for the stop while he looked for the requested documentation. The video is inconclusive, but it suggests that Mr. Pierre was, in fact, looking through paperwork. Mr. Pierre then gave one of the officers his license and registration. Officer Norton asked if he had an insurance card. Mr. Pierre replied, "you still haven't told me why you pulled me over." (ECF No. 28-7 at 00:50-1:03.) Officer Norton said that he needed Mr. Pierre's

insurance. At this point, Mr. Pierre asked to speak to a supervisor. The officers then told Mr. Pierre to exit his car.

After a brief back-and-forth, Mr. Pierre exited the car, but his passengers remained inside. The officers handcuffed Mr. Pierre and frisked him for weapons. Officer Norton told Mr. Pierre that he was not under arrest but that they were detaining him. At some point, however, Officer Clarke told Mr. Pierre that he was "going to jail." (ECF No. 29-4 at 41:10-17.) The officers did not find any contraband or weapons on Mr. Pierre. Nevertheless, they placed Mr. Pierre in the back of their police car to wait for a supervisor.

Next, the officers frisked Mr. Pierre's car and spoke to his passengers. They also radioed for a supervisor. They did not discover anything when they frisked the car, but they kept Mr. Pierre in the back of the patrol car until the supervisor arrived, about 30 minutes later. After Mr. Pierre finished speaking with the supervisor, Officers Norton and Clarke issued two traffic citations to Mr. Pierre for motor vehicle code violations, one for passing them in the oncoming traffic lane and one for failing to stop at the stop sign. In traffic court, a judge found Mr. Pierre guilty of failing to stop at a stop sign.

### B.    Procedural History

Mr. Pierre initiated this action on December 12, 2019. In his Amended Complaint, he asserts Federal and Pennsylvania state law claims against Officers Clarke and Norton: (1) a claim under 42 U.S.C.§ 1983 for violations of his Fourth Amendment rights; and (2) claims for false arrest and false imprisonment under Pennsylvania tort law. Officers Clarke and Norton filed this motion for summary judgment, arguing that the record does not support Mr. Pierre's § 1983 or state law claims and that they are immune from suit.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). Where there is video footage related to the claims, the Court must not draw inferences that are "blatantly" inconsistent with the video evidence. *Scott*, 550 U.S. at 380-81.

## III.    ANALYSIS

### A.     Preliminary Matters

#### 1.     The video

Where a video of an incident exists, the Court cannot disregard that video and credit witnesses who offer competing versions of events. *See Scott*, 550 U.S. at 379-80. The decision only applies if the video blatantly contradicts a witness's version of events.

*See El v. City of Pittsburgh*, 975 F.3d 327, 333 (3d Cir. 2020). Where a video is subject to interpretation, a court must interpret it in the light most favorable to the nonmoving party. The video of this incident is not conclusive. The camera points away from the interaction, so no one is visible in the video. Likewise, ambient noise masks some of the audio. The Court therefore interprets the video in the light most favorable to Mr. Pierre as the non-moving party.

To the extent that Mr. Pierre relies on the video to establish statements that his passengers made, Mr. Pierre fails to identify who made each statement in the video. The statements are therefore inadmissible hearsay. Fed. R. Evid. 901(a); *see also United States v. Ligambi*, 891 F. Supp. 2d 709, 717 (E.D. Pa. 2012).

### 2.    Search of Mr. Pierre's car

Although Mr. Pierre complains that the officers conducted two full searches of his car, the evidence does not support that. The law permits police officers to search the passenger compartment of a car under some circumstances, but only authorizes a more complete search of the whole car if probable cause exists. *Compare Michigan v. Long*, 463 U.S. 1032, 1050 (1983)("[A] search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief. . . that the suspect is dangerous and the suspect may gain immediate control of weapons.") *with Knowles v. Iowa*, 525 U.S. 113 (1998) (invalidating Iowa statute that authorized full search of vehicle in a traffic stop context).

Mr. Pierre has not offered any testimony that any officer did anything other than look in the passenger compartment of his car. And, he admits he could not see what the

officers were doing when they looked in his car. That concession means he has no personal knowledge about any search of the car. Mr. Pierre points to statements that he heard his passengers make about the search (or searches) of the car. But as inadmissible hearsay, the passengers' statements cannot support Mr. Pierre's claims. He therefore cannot base a claim on the searches of his car.

### B.    Section 1983 Claim

Section 1983 provides a civil remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must show that "'some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'" *Id.* (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (alteration in original)).

Qualified immunity shields police officers from liability for civil damages brought pursuant to § 1983 "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Officers seeking qualified immunity bear the burden of establishing the affirmative defense. *See Halsey*, 750 F.3d at 288. To determine whether an officer is entitled to qualified immunity, a court must determine (1) whether the officer violated a constitutional right and, if so, (2) whether the right was clearly established. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Qualified immunity attaches if the officer can show that at least one prong was not met. *Pearson v. Callahan,* 555 U.S. 223 (2009). The "analysis must be conducted separately for each search or seizure that is

alleged to be unconstitutional." *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547 (2017).

Mr. Pierre's interaction with Officers Clarke and Norton divides into two stages: (1) the initial car stop; and (2) the frisk and detention. The Court will first address the constitutionality of each stage of the interaction. It will then address whether the law is clearly established.

### 1.     Constitutional violation

#### a.     The initial stop and order to exit the vehicle

A police officer may stop a car committing a traffic violation. *See Pa. v. Mimms*, 434 U.S. 106, 109 (1977); *United States v. Bonner,* 363 F.3d 213, 216 (3d Cir. 2004). A routine traffic stop is constitutional when it is supported by reasonable suspicion. *United States v. Johnson,* 452 Fed. Appx. 219, 225 (3d Cir. 2011). Moreover, once a vehicle has been lawfully stopped, an officer may ask the driver to step out of the vehicle. *Mimms,* 434 U.S. at 111.

The officers' traffic stop of Mr. Pierre was lawful because Mr. Pierre ran a stop sign. Mr. Pierre argues that "the traffic stop initiated by the Defendants was unlawful because it was unsupported by either reasonable suspicion or probable cause." (ECF No. 29 at 7.) But a traffic court judge found Mr. Pierre guilty of running a stop sign. Mr. Pierre may not collaterally attack that court's finding. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

#### b.     The frisk and detention

During a traffic stop, a police officer may conduct a pat-down or a "frisk" of the driver and occupants of a stopped vehicle, but only if the officer "harbor[s] reasonable suspicion that the person subjected to the frisk is armed and dangerous."  *Arizona v.*

*Johnson*, 555 U.S. 323, 327 (2009).  Under such circumstances, a police officer may also search passenger compartments of a stopped vehicle where weapons could be hidden. *See Michigan v. Long*, 463 U.S. 1032, 1050 (1983). Placing a driver in the rear of the patrol car does not transform an otherwise lawful investigatory stop into an arrest, provided officers have reasonable suspicion that criminal activity may be afoot. *See United States v. Edwards,* 53 F.3d 616, 619 (3d Cir.1995); *see also United States v. Blackshear*, No. CRIM.A. 11-227, 2011 WL 5129952, at *7 (E.D. Pa. Oct. 28, 2011), *aff'd,* 532 F. App'x 316 (3d Cir. 2013) ("The pat-down and brief detention of Davis in  the back of  the patrol car as  Officers  Gilliam  and  Witherspoon  continued  their investigation  was  reasonable  under  the  circumstances."). Likewise, handcuffs do not change the analysis or make the stop excessively intrusive. *See United States v. Douglas*, 522 F. App'x 125, 128 n.3 (3d Cir. 2013) (Even if he [suspect] had been handcuffed before being placed in the car, the stop was not excessively intrusive.").

An officer's reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous, and the suspect may gain immediate control of weapons." *Long*, 463 U.S. at 1049. "The officer need not be absolutely certain that  the  individual  is  armed;  the  issue  is  whether  a  reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

Courts look to "the totality of the circumstances" in deciding whether there was reasonable suspicion. *United States v. Cortez*, 499 U.S. 411, 417 (1981). Factors that support reasonable suspicion include the presence of a suspect in a high-crime area,

behavior that is nervous or evasive, and "behavior that conforms to police officers' specialized knowledge of criminal activity." *United States v. Torres,* 534 F.3d 207, 211 (3d Cir.2008) (citation and quotation omitted); *see also United States v. Johnson*, 452 F. App'x 219, 226 (3d Cir. 2011) (finding nervous behavior relevant to reasonable suspicion that an individual is armed and dangerous).

As with any other inquiry, the Court must determine the totality of the circumstances by resolving factual disputes in Mr. Pierre's favor. Because the video evidence is not conclusive on any of these points, the Court credits Mr. Pierre's version of the events. That means that, for purposes of this Motion, Mr. Pierre did not "speed" past them when he pulled around them, he was not "moving around the car in a manner consistent with someone trying to conceal a weapon," and he did not refuse to provide identification or become aggressive. (ECF No. 28 at 7.) Instead, the totality of the circumstances reveals that Mr. Pierre committed two traffic violations in a high crime area and asked the officers why they stopped him while gathering his license and registration.

Those circumstances do not justify the officers' decision to detain and handcuff Mr. Pierre. It is not unreasonable for a driver to ask why a police officer pulled him over, as Officer Clarke conceded in his deposition. (ECF No. 28-3 at 77:22-78:4.) The result does not change because the traffic stop and Mr. Pierre's question took place in a high-crime area. Nor would it change if Mr. Pierre's voice exhibited frustration or irritation at being stopped, even if the officers had a basis to effect the stop. Citizens have a right to question police about the police's right for intruding on the citizen's liberty. And being uncouth about asking the question does not make the citizen a threat.

The officers' arguments to the contrary all require the Court to accept their version of events. The Court cannot do so. And, if the officers lacked reasonable suspicion about Mr. Pierre, then the rest of the encounter also becomes problematic. They had no basis to frisk him. They had to wait for a supervisor to arrive, but they had no basis to handcuff him and put him in the backseat of the car while they waited. The Court need not address whether the traffic stop became unlawful because it was "prolonged beyond the time reasonably required to complete [the traffic stop's] mission." *Illinois v. Carballes*, 543 U.S. 405, 407 (2005). When facts are viewed in the light most favorable to Mr. Pierre, the traffic stop was already unlawful by the time the officers placed Mr. Pierre in the back of the police car.

### 2.   Clearly established right

Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Courts should not "define clearly established law at a high level of generality." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018). A court need not identify a case directly on point for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). In assessing a claim of qualified immunity, like any other aspect of a summary judgment ruling, the court must not resolve genuine disputes of fact in favor of the moving party. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*). It must decide whether the facts taken in the light most favorable to the non-moving party take the case to a place where the law is not clearly established. *Id.*

Taking these facts in that light, Officers Clarke and Norton frisked, handcuffed, and detained Mr. Pierre in the back of the police car because Mr. Pierre committed traffic violations in a high-crime area and because he asked why the officers stopped him. An individual's presence in a high-crime area alone does not create reasonable suspicion that the individual is armed or dangerous or that criminal activity is afoot. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Goodrich*, 450 F.3d 552, 561 (3d Cir. 2006); *U.S. v. Valentine*, 232 F.3d 350, 357 (3d Cir. 2000); *United States v. Roberson*, 90 F.3d 75, 79-80 (3d Cir. 1996). Nor does a traffic violation. *See, e.g.*, *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) ("An officer. . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But. . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."); *United States v. Mosley*, 454 F.3d 249, 255 n.9 (3d Cir. 2006)("A traffic stop requires only reasonable suspicion to believe that a traffic violation has been committed. But detaining the vehicle longer than is necessary to effectuate the legitimate response to that traffic violation requires independent suspicion that some other crime is afoot."). And, officers cannot detain and handcuff an individual without reasonable suspicion. *See Terry*, 392 U.S. 1.

The totality of the circumstances does not lead to a different outcome. The collection of cases that the Court has cited establishes that citizens do not give up their rights just because they encounter law enforcement in a high crime area. Citizens also often exhibit nervousness or frustration when law enforcement intrudes on their day-to-day activities. *See United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997). The cases collectively establish that citizens can act that way in a high crime area without giving

officers a basis to intrude on their Constitutional liberty. The Third Circuit agreed with this analysis in an unpublished opinion with comparable facts. *United States v. Alvin*, 701 F. App'x 151, 155 (3d Cir. 2017).In *Alvin*, the Third Circuit held that defendant's alleged appearance of being startled, and then crouching behind his vehicle after purportedly seeing a police car did not provide officers with reasonable suspicion that criminal activity was afoot, even though parking lot was in a high-crime area and it was late at night. *Id.* at 155.

To be sure, a jury might interpret the disputed facts differently and decide that the officers had reasonable suspicion to frisk Mr. Pierre. And if/when that happens, the Court might need to revisit the question of whether the law is clearly established. But at this stage of the proceedings, taking the facts in the light most favorable to Mr. Pierre, Officers Clarke and Norton detained Mr. Pierre for reasons that the law clearly did not allow.

### C.     State Law False Arrest And False Imprisonment Claim

In Pennsylvania, false imprisonment is the unlawful detention of another person. *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). In cases where a defendant allegedly acts "for the purpose of securing the administration of the law without actual legal justification, 'false arrest' is synonymous with false imprisonment." *Gagliardi v. Lynn*, 285 A.2d 109, 111 (Pa. 1971). In other words, "one who confines another, while purporting to act by authority of law which does not in fact exist, makes a false arrest and must respond in damages for whatever civil wrongs he commits." *Id.* at111. An "arrest" in this context is any unlawful detention, even if it does not rise to the level of an "arrest" under the Fourth Amendment.

Under the Pennsylvania Political Subdivision Tort Claims Act, municipal employees are generally immune from tort liability. *See* 42 Pa.C.S.A. § 8541 *et. seq*. A plaintiff can avoid the PSTCA's immunity provision and hold local agency employees liable if the conduct constituted a "crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S.A. § 8550. A police officer's conduct constitutes "willful misconduct" if the officer "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue," so that such desire can be implied. *Evans v. Philadelphia Transportation Co.*, 212 A.2d 440, 443 (Pa. 1965). A police officer acts willfully when he "intentionally arrest[s a person] knowing that he lacked probable cause to do so." *Renk v. City of Pittsburgh*, 537 Pa. 68, 77 (1994)

When the Court draws all reasonable inferences in favor of Mr. Pierre, Officers Clarke and Norton lacked reasonable suspicion to handcuff and detain Mr. Pierre in the back of their police car. Because they lacked reasonable suspicion, they acted without legal authority. And they certainly intended to bring about his detention because they handcuffed him and left him in the backseat of their car. As a result, Officers Clarke and Norton are not entitled to summary judgment on these claims.

## IV.    CONCLUSION

In our legal system, juries decide questions of facts. This case presents just such questions. A jury will have to decide whose version of events to accept. The Court will therefore deny Defendants' Motion for Summary Judgment. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 19, 2021